**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DE LAGE LANDEN FINANCIAL | : | |
| SERVICES, INC., | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO. O8-0530 |
| | : | |
| v. | : | |
| | : | |
| BARTON NELSON, INC., | : | |
| | : | |
| Defendant | : | |

## MEMORANDUM RE: MOTION TO DISMISS

**Baylson, J.**                                        **November 4,  2008**


Presently before this Court is Plaintiff's Motion to Dismiss Defendant's Counterclaims

pursuant to Fed. R. Civ. P. 12(b)(6).  In this case, Plaintiff sued Defendant for breach of contract,

and Defendant has counterclaimed, asserting various contract and tort claims.  Plaintiff responds

that Defendant's claims are barred by both the parol evidence rule and the gist of the action

doctrine.  Alternatively, the Plaintiff suggests the claims are improperly pled and the deficiencies

cannot be sufficiently cured.  For the reasons set forth below, Plaintiff's Motion will be granted

with respect to the tort claims but denied with respect to the breach of contract claim.[1]

Oral argument was held on October 17, 2008.

---

[1]This is one of several cases filed by DLL in this Court, a number of which are assigned
to me as related cases.

I.      **Factual and Procedural Background**

   A.      **Complaint**

DLL filed its Complaint against Nelson alleging breach of contract and unjust enrichment

on February 1, 2008.  (Doc. No. 1).  According to the Complaint, Plaintiff, De Lage Landen

Financial Services, Inc. ("DLL"), entered into a Rental Agreement[2] with Defendant, Barton

Nelson, Inc. "(Nelson").  (Compl. ¶ 5).  The Rental Agreement provided for the lease of certain

phone equipment, which would be serviced by third party Defendant, Capital 4, Inc. ("Capital 4")

under a separate Customer Agreement.  (Compl. ¶s 6, 9).   The Rental Agreement included the

following provision:

> If the rental payments include the cost of maintenance and/or service being provided by
> the supplier and/or manufacturer, you [Nelson] acknowledge that we [DLL] are not
> responsible for providing any required maintenance and/or service for the equipment.
> You will make all claims for service and maintenance solely to the supplier and/or
> manufacturer and such claims will not affect your obligation to make all required
> payments.

(Compl., Ex. A).  The Rental Agreement also included an integration clause noting that the

document represented the "entire agreement" between the parties.  (Id.)  The clause further

explained that "[n]o agreements or understandings are binding on the parties unless set forth in

writing and signed by the parties."  (Id.)  The top left corner of the Agreement contained Capital

4's logo, followed by the statement "A Program of De Lage Landen Financial Services."  (Id.)

Under the Rental Agreement, Nelson paid $5,907.36 per month to DLL, which included a

$1,577.35 monthly "pass thru" owed to Capital 4 for Capital 4's services.  (Compl. ¶s 9-11).  The

Complaint alleges that in 2007, Capital 4 failed to make payments to Defendant's

--------

[2]The contract is also referred to as the "Funding Agreement."

telecommunication service providers.  (Compl. ¶ 12).  DLL then reduced Nelson's monthly payment to $4330.01, but according to DLL, Nelson failed to make any monthly payments to DLL.  (Compl. ¶s 13, 14).   DLL then filed the Complaint alleging breach of contract and unjust enrichment, seeking $196,214.75 in compensatory damages, prejudgment interest thereon, attorneys fees and cost of suit, and any other relief the Court deemed equitable.  (Compl. ¶s 19, 22).

### B.     Counterclaim

On May 12, 2008, Nelson responded with an Answer asserting several affirmative defenses as well as a Counterclaim to Plaintiff's Complaint.  (Doc. No. 9).  Nelson alleges that it simultaneously entered into a set of contracts with DLL and Capital 4 , including the above mention Rental Agreement and a separate Customer Agreement, for the provision of telecommunication and internet equipment and services through a program called the 3Com Power of $Zero$^{TM}$.  (Countercl. ¶ 8).  Under the program, Nelson would be able to lock in the costs of its current telecommunication and internet services for six years and also obtain either a cash rebate or new equipment, at no additional cost.  (Countercl. ¶ 7, 8, 27).  Nelson alleges that DLL also falsely represented that the Rental Agreement between Nelson and DLL was intended merely as a means of leveraging the costs of the Program, rather than as an actual lease of equipment.  (Countercl.  ¶ 28, 30).

Pursuant to this arrangement, Nelson alleges exercised the "equipment" option and began making its monthly payments to DLL, which accepted payments on behalf of the Power of $Zero$^{TM}$ Program Offerors.  (Countercl. ¶ 8).   However, Nelson asserts that the Program Offerors eventually notified Nelson that Capital 4 was delinquent on its payments to the

telecommunication and internet service providers and recommended that Nelson directly contract with those providers to obtain service until other solutions could be found.  (Countercl. ¶ 10). Nelson alleges that it did enter into such contracts with the providers directly, at a substantial cost to Nelson.  (Countercl. ¶ 11).  Nelson contends it continued to make payments to DLL but offset the amount of its payment by the amount of its new contracts with the providers.  (Countercl. ¶s 14-15).

Nelson's Counterclaim includes a claim for breach of contract (Count I), which alleges that DLL is liable for non-payment of the Public Access Services by Capital 4, as required by the "Customer Agreement."  (Countercl. ¶ 13, 24).  Nelson also claims fraud and misrepresentation (Count II), negligent misrepresentation (Count III), and fraudulent inducement (Count IV) based on DLL's representations that it would provide services and equipment at no additional cost and that the Rental Agreement between DLL and Nelson was used by the $Zero Offerors not as an equipment lease but as a way to leverage costs to provide the agreed upon services.  (Countercl. ¶ 27, 28).  Nelson alleges that it suffered at least $400,000.000 in damages and seeks compensatory damages, prejudgment interest thereon, punitive damages, a declaration that the Rental Agreement is void, costs and attorneys fees, and any other relief the court deems appropriate.

DLL filed its Motion to Dismiss the Counterclaim on June 2, 2008.  (Doc. No. 12).

## II.   <u>Parties Contentions</u>

DLL first asserts that Count I of Nelson's Counterclaim, alleging breach of contract, should be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6) because the parol evidence rule bars admission of any purported oral statements regarding the cost of the equipment or DLL's obligation to provide services that add terms to the Rental Agreement.

DLL notes that Nelson does not allege breach of any contract to which DLL was a signatory, as DLL was not a party to the Customer Agreement, and Nelson has not sufficiently plead the existence of a joint venture to hold DLL liable to a contract between Nelson and Capital 4 under such a theory.

DLL also asserts Nelson's claims alleging fraud and misrepresentation, negligent misrepresentation, and fraudulent inducement in Counts II-IV should be dismissed for failure to state a claim because the gist of the action doctrine prevents a litigant from recasting a contract claim regarding statements about precontractual duties as a tort claim. DLL further asserts Nelson has failed to plead these claims with particularity under the requirements of Fed. R. Civ. P. 9(b), and thus the claims should be dismissed. Amendment of the pleadings is futile because the parol evidence rule will continue to defeat the breach of contract claim, and the fraud claims will similarly fail due to the gist of the action doctrine.

Nelson responds that the parol evidence rule does not apply because the Rental and Customer Agreements must be read together as one contract, and thus statements promising or describing services in one agreement are not "adding" terms to the other agreement in violation of the rule. Similarly, statements made in reference to one agreement may be considered when interpreting the other. Furthermore, Nelson sufficiently plead that DLL and Capital 4 were engaged in a joint venture and DLL can therefore be held to the terms of the contract between Capital 4 and Nelson. Nelson has thus stated a claim upon which relief can be granted for breach of contract.

Nelson further replies that the gist of the action doctrine does not apply to the fraud claims in Counts II-IV because the fraud claims arise out of misrepresentations regarding the

purpose and intent of the Rental Agreement and its connection to the Customer Agreement, not

any representations regarding DLL's obligations to pay the Public Access Service Providers (the

basis of the breach of contract claim).  Thus the two claims are completely distinct.  Nelson has

also plead the fraud claims with sufficient particularity under Rule 9(b).  Dismissal at this point

would be premature and any flaws in the pleadings can be corrected by amendment.

### III.   Legal Standards

#### A.   Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the

parties are citizens of different states and the amount in controversy exceeds the sum or value of

$75,000, exclusive of interest and costs.

#### B.   Standard of Review

When deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6),

the Court may look only to the facts alleged in the complaint and its attachments.  Jordan v. Fox,

Rothschild, O'Brien & Frankel, 20 F.3d 1251, 1261 (3d Cir. 1994).  The Court must accept as

true all well-pleaded allegations in the complaint and view them in the light most favorable to the

plaintiff.  Angelastro v. Prudential-Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir. 1985).  A Rule

12(b)(6) motion will be granted only when it is certain that no relief could be granted under any

set of facts that could be proved by the plaintiff.  Ransom v. Marrazzo, 848 F.2d 398, 401 (3d

Cir. 1988).

A valid complaint requires only "a short and plain statement of the claim showing that the

pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  In order to state a valid complaint a plaintiff

must make a "showing" that is more than just a blanket assertion that he is entitled to relief.

Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008).  "We caution that without

some factual allegation in a complaint, a claimant cannot satisfy the requirement that he or she

provide not only 'fair notice' but also 'grounds' on which the claim rests."  Id. (citing Bell

Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965 n.3 (2007)).

**V.     Discussion**

> **A.     Defendant's Tort Claims in Counts II-IV are Barred by the Parol Evidence
> Rule and the Gist of the Action Doctrine**

In Counts II-IV, Defendant alleges that Plaintiff either intentionally or negligently

misrepresented several aspects of the Funding and Customer Agreements.  At oral argument,

Defendant expressed that these representations were both written and oral.  Defendant

specifically referred to written statements found in the on-line Power of $Zero™ eBrochure,

which is incorporated by reference in the Customer Agreement.[3]  Those statements characterized

the Rental Agreement between Plaintiff and Defendant as a means of financially leveraging the

service contracts, rather than as a leasing agreement.[4]  Defendant also mentioned at oral argument

---

[3]The Customer Agreement specifically states "[T]he matters set forth in the section of the eBrochure titled 'How Does 3Com Power of $Zero™ Solution Work?' are the terms which are expressly incorporated by reference, as part of the Agreement."  (Doc. 14, Ex. 1.)

[4]At oral argument, Plaintiff cited Paragraphs 2, 13, and 17 in the eBrochure as fraudulent statements.  Paragraph 2 expresses "Using the 3Com Power of $Zero™ Solution, We financially leverage the difference between the price You pay now for those services and Our cost to provide those same services."

In response to the question, "What are my obligations under the Customer Agreement?" Paragraph 13 of the eBrochure states, "You are agreeing to pay to Us, or Our assigns, a monthly payment (the "Monthly Payment"), as set forth in Schedule "A" on the day You assign the Agreement, and on the first day of each month following the date that We assume responsibility for providing the Public Access Services currently provided by the ILEC or PAS providers.  We may require that Your Monthly Payment be remitted directly to the holder of your Rental Agreement."

Finally, Paragraph 17 of the eBrochure explains that "The Rental Agreement is an

that Plaintiff orally represented that the equipment would be for no additional cost, reinforcing

the language that appeared in the on-line Power of $Zero[TM] eBrochure.[5]  Regardless of whether

the representations were oral or written, Defendant is unable to state a claim upon which relief

can be granted for any of the tort counterclaims in Counts II, III and IV because either the parol

evidence rule or the gist of the action doctrine will bar the claim.

<strong>1.    The Parol Evidence Rule Bars Admission of Oral Statements</strong>

To the extent that Defendant relies on any oral representations as the basis of its tort

claims, the parol evidence rule operates to bar the admission of those statements.  Where the

parol evidence rule will bar the admission of statements necessary to establish a contract or tort

claim, a court may properly grant a motion to dismiss.  <u>See</u> <u>Coram Healthcare Corp. v. Aetna</u>

<u>U.S. Healthcare, Inc. Inc.</u>, 94 F. Supp. 2d 589, 595 (E.D. Pa. 1999); <u>Bray v. Dewese</u>, 2008 WL

623824, at *2 (E.D. Pa. March 6, 2008).

The parol evidence rule in Pennsylvania[6] requires that "[a]ll preliminary negotiations,

---

Agreement between You and Capital 4 Financial Services, a Program of De Lage Landen
Financial Services.  We use the Rental Agreement to financially leverage the difference in costs
between what You pay for Public Access Services and what it costs Us to provide those same
services. The structure of the Rental Agreement provides for simple accounting treatment of the
program's value, while maintaining the Monthly Payment as an operational exercise."  (Doc. 14,
Ex. 2.)

[5]Paragraph 1 of the eBrochure asks "What is the 3Com Power of $Zero[TM] Solution?"  The
response states in relevant part "The 3Com Power of $Zero[TM] Solution is a financial product
under which your company, as a customer . . . can receive, at <u>$Zero[TM] additional cost to You</u>: (1)
the Equipment Option; (2) the Cash Payment Option; or (3) the Equipment <u>and</u> One-Half Cash
Payment Option . . ." (emphasis in original).

[6]Plaintiff argues that Pennsylvania law applies because the Rental Agreement between
Plaintiff and Defendant contained forum selection and choice of law clauses choosing the Eastern
District of Pennsylvania and Pennsylvania law respectively.  (Pl.'s Memo at 4-5).  Defendant
responds that the applicable law is actually unclear if the court chooses to read the Rental

-8-

conversations and verbal agreements are merged in and superseded by the subsequent written

contract . . . and its terms and agreements cannot be added to nor subtracted from by parol

evidence." <u>Yocca v. Pittsburgh Steelers</u>, 854 A.2d 425, 436 (Pa. 2004).[7]   Judge Brody has

specifically noted that under Pennsylvania law, the rule applies to fraudulent inducement,

fraudulent misrepresentation, and negligent misrepresentation claims.  <u>Coram Healthcare Corp.</u>,

94 F. Supp. 2d at 595.[8]   Furthermore, for the rule to apply, there must be a writing that

_____

Agreement in conjunction with the associated Customer Agreement, as the Defendant suggests, because the Customer Agreement contains an alternative choice of law clause selecting Texas law.  However, Defendant then states that "for purposes of this motion, Defendant has analyzed the issues under Pennsylvania law."  (Def.'s Memo at 6).  Based on this agreement to use Pennsylvania law, this Court will apply Pennsylvania law in analyzing the tort and contract claims.

   [7]Pennsylvania courts recognize three basic exceptions to the parol evidence rule, although none appear to apply here.  First, the rule does not apply when a party alleges fraud in the execution of a contract, which occurs when a party represents that a term will be included in a written agreement and those terms are later omitted by fraud, accident, or mistake.  <u>Coram Healthcare Corp. v. Aetna U.S. Healthcare Inc.</u>, 94 F. Supp. 2d 589, 592 (E.D. Pa. 1999).  Defendant explicitly stated that it was not making a fraud in the execution claim at oral argument.
   Parol evidence is also permitted to clarify or resolve an ambiguity in a contract term, <u>Yocca v. Pittsburgh Steelers</u>, 854 A.2d 425, 437 (Pa. 2004), but Defendant has not suggested in its briefs or at argument that either contract was ambiguous.  Finally, the rule is also relaxed in cases involving prior oral representations about a lack of physical defects in real property that a defendant is buying or leasing.  <u>Rock v. Voshell</u>, 397 F. Supp. 2d 616, 623-24 (E.D. Pa. 2005).  This exception is clearly inapplicable as the contract did not concern real property.

   [8]In <u>Wall v. CSX Transp., Inc.</u>, the Second Circuit held that the lower court's reliance on <u>Coram</u> in that case was misplaced because <u>Coram</u> "overstates the reach of the parol evidence rule in Pennsylvania by failing to note that the rule only applies where the alleged misrepresentations concern a subject which is specifically dealt with in the written agreement, and where the agreement is fully integrated."  471 F.3d 410, 421 (2d Cir. 2006).  The Second Circuit then concludes that Pennsylvania cases shows Pennsylvania to be "more open to fraudulent inducement claims" than <u>Coram</u> implies.  <u>Id.</u>
   Assuming the Second Circuit is correct in its assertion that Pennsylvania's parol evidence rule applies only if the alleged misrepresentations concern a subject dealt with in the written agreement, it is clear here that the very subject of the alleged oral misrepresentation–that  the

"represents the entire contract between the parties."  Yocca, 854 A.2d at 436 (internal quotations

and citations omitted).  An agreement is deemed to be the entire contract "if it appears to be a

contract complete within itself, couched in such terms as import a complete legal obligation

without any uncertainty as to the object or extent of the [parties'] engagement."  Id.

An integration clause, which states that the writing represents the parties' entire

agreement, lends additional support to the determination that the writing is just that and

"expresses all of the parties' negotiations, conversations, and agreements made prior to its

execution."  Id.   Although the presence of the integration clause is "not dispositive," the "effect

is to make the parol evidence rule particularly applicable."  Coram Healthcare Corp, 94 F. Supp.

at 595 (internal quotations and citations omitted).  However, "where it can be shown by

competent evidence that no single writing embodied or was intended to embody the whole of the

parties understanding, the parol evidence rule has no application."  Int'l Milling Co. v.

Hachmeister, Inc., 110 A.3d 186, 191 (Pa. 1955).  Where a single agreement "does not fully

express essential elements of the parties' undertaking," an integration clause will not prevent a

court from examining several agreements together.  Neville v. Scott, 127 A.2d 755, 757 (Pa.

Super. Ct. 1975).

Thus, to determine whether the oral statements are admissible, this Court must first

---

equipment would be for "no additional cost"–was the main purpose of the Rental Agreement,
which specified the monthly cost of leasing the equipment.  Furthermore, the Rental Agreement
contained an integration clause.
      Since the decision in Wall, the Pennsylvania Supreme Court has reaffirmed its
application of the parol evidence rule to claims involving fraudulent inducement as opposed to
claims for fraud in the execution.  See Toy v. Metropolitan Life Ins. Co., 928 A.3d 186, 206 (Pa.
2007) (explaining the Pennsylvania distinction between the two types of fraud claims, and
concluding that the parol evidence rule did not apply where the claim was for fraud in the
execution).

determine whether a final written agreement existed to which the parol evidence rule can apply, as a matter of law.  Defendant argues that this Court should read the two agreements together as one final, integrated contract, despite the presence of an integration clause in the individual Rental Agreement, because the parties clearly intended for the agreements to considered as one whole contract and each single agreement does not fully reflect all the essential terms of the contract.  Several cases have held that when agreements are executed on the same day, address the same business transaction, and reference each other, they should be "construed together and interpreted as a whole."  Hansen v. Citibank, N.A., 1995 WL 273642, at *5 (E.D. Pa. May 5, 1995); see also Korblin Refrigerated Xpress, Inc. v. Pitterich, 805 F.2d 96, 107 (3d Cir. 1986) (holding that when two writings are contemporaneously executed, they should be analyzed together, "each one contributing to the ascertainment of the true intent of the parties").  This is particularly true where the agreements "cross reference" each other, id. at 107, as they did here.[9]

     Even assuming arguendo, based on the circumstances alleged in the Complaint and Counterclaim, that the Court should consider Customer and Rental Agreement as one final, written contract, the parol evidence rule would still bar the admission of the oral statements to prove the tort claims.  If the agreements are read as one contract, as Defendant suggests, the

---

[9]Plaintiff points to United Refining Co. v. Jenkins, 189 A.2d 574, 577-78 (Pa. 1963), where Pennsylvania Supreme Court rejected the defendant's argument for reading two contracts together, in part because the contracts were each with two different parties and each appeared full and complete on its face.  However, in Von Lange v. Morrison-Knudsen Co., Inc., 460 F. Supp. 643, 648 (M.D. Pa. 1978), aff'd 609 F.2d 504 (3d Cir. 1979), the court specifically held that multiple documents may be interpreted together "even though the parties to the separate writings may not be the same as long as the writings pertain to the same transaction and interpretation is aided by reading them together."  The court there found that only by reading the two agreements together could it discern the true intent of the parties, even though there was only one party in common to the two agreements.  Id.

terms of one agreement would not be considered extrinsic to the other and thus any written statements in the eBrochure would be admissible.  However, reading the agreements together will not similarly render the oral statements admissible; the oral statements remain extrinsic to both the Customer and Rental Agreements individually and when considered together. Therefore, to the extent that Defendant relies on any oral representations as the basis of its various fraud counterclaims in Counts II, III, and IV, Defendant will be unable to prove those claims.

### 2.    The Gist of the Action Doctrine Bars the Tort Claims

Similarly, to the extent that Defendant relied on either written representations or oral statements as the basis of its tort claims, the gist of the action doctrine bars the tort claims.[10] "Under Pennsylvania law, the gist of the action doctrine precludes a plaintiff from recasting a breach of contract claim into a tort claim."  Penn City Investments, Inc. v. Soltech, Inc., 2003 WL 22844210, at *2 (E.D. Pa. Nov. 25, 2003) (citing Etoll, Inc. v. Elias/Savion Advertising, Inc., 811 A.2d 10, 14 (Pa. Super. Ct. 2002)).[11]  To survive as a tort "'the wrong ascribed to defendant must be the gist of the action, the contract being collateral.'"  Williams v. Hilton Group, PLC, 93 Fed. Appx. 384, 385-86 (3d. Cir. 2004) (per curiam) (quoting Bash v. Bell

---

[10]For purposes of this discussion, the Court will assume that the contracts are read together and that the parol evidence rule thus does not bar the admission of either agreement.

[11]While the Pennsylvania Supreme Court has not adopted the gist of the action doctrine, the Pennsylvania Superior Court has repeatedly endorsed it.  Judge Dalzell has recognized the doctrine as Pennsylvania law and previously predicted that the Pennsylvania Supreme Court would adopt it.  Owen v. J. Roberts Sch. Dist. v. HTE, Inc., 2003 WL 735098, at *2 n.3 (E.D. Pa. Feb. 28, 2003).

Telephone Co., 601 A.2d 825, 829 (Pa. Super. 1992)).[12]

According to the doctrine, "[i]f the precontractual statements concerned specific duties

that the parties later outlined in the contract . . . the gist of the action doctrine precludes such

statements from forming the basis of a tort cause of action." Penn City Investments, 2003 WL

22844210, at *3. Essentially, if the source of the duty that was breached arose from the parties'

agreements rather than social policy, the plaintiff is limited to a contract claim. Owen v. J.

Roberts Sch. Dist. v. HTE, Inc., 2003 WL 735098, at *2 (E.D. Pa. Feb. 28, 2003). See also

Michael M. Baylson, Kelly D. Eckel, and Sandra A. Jeskie, Contracts, in 6 Business and

Commercial Litigation in Federal Courts, § 68 (Robert L. Haig ed., 2d ed. 2005) (discussing the

development of the gist of the action doctrine as a means of maintaining the distinction between

contract and tort law). In Penn City Investments, this Court held that the gist of the action

doctrine barred tort claims where the Plaintiff alleged the final contract did not include all the

details previously discussed in negotiations because the claims "are either directly addressed by

the contract, or are so closely related to the contractual relationship." 2003 WL 22844210, at *4.

This Court noted that where courts have allowed torts claims to proceed concurrently with

contract claims, in American Guarantee & Liab Ins. Co. v. Fojanini, 90 F. Supp. 2d 615, 623

(E.D. Pa. 2000) and Asbury Automative Group LLC v. Chrysler Ins. Co., 2002 WL 15925, at *3

(E.D. Pa. Jan. 7, 2002), the representations dealt with issues not addressed in the contracts. Penn

---

[12]This Court has noted that many decisions invoking the doctrine have occurred at the summary judgement level. Metro Auto Sales v. Alfred Stein, Inc. 2006 WL 237505, at *3 (E.D. Pa. January 30, 2006). However, the Court also observed that there is at least some precedent for dismissing the case under the doctrine on a motion to dismiss. Id. (citing Owen, 2003 WL 735098, at *1).

City Investments, 2003 WL 22844210, at *4.

In the present case, Defendant's tort claims in Counts II-IV (fraudulent misrepresentation, negligent misrepresentation, and fraudulent inducement respectively) are essentially replicates of the breach of contract claim, recast in tort language.  Importantly, the contracts, which were signed by the Defendant, specifically discussed the issues that Defendant claims Plaintiff misrepresented.  First, Defendant asserts in its tort claims that Plaintiff either intentionally or negligently misrepresented that the equipment would be "at no additional charge."  However, the Rental Agreement clearly indicates that Defendant is paying a monthly fee for the rental of telecommunication equipment.

Defendant also asserts that Plaintiff misrepresented the connection between the two Agreements and whether Plaintiff was a financer with a more significant relationship to the Program or a mere leasor of equipment.  Yet the Rental Agreement clearly outlined the obligations of both parties under that Agreement: it specifically stated that Plaintiff would provide rental equipment and Defendant would make monthly payments for that equipment.  The Customer Agreement may describe Plaintiff's role slightly differently, as a means of financially leveraging the agreements, but the contract as a whole clearly addresses Plaintiff's duties toward Defendant.  Defendant may assert in its breach of contract counterclaim that Plaintiff did not satisfy those obligations as memorialized in the written contracts, whatever they may be, but it may not also bring tort claims concerning those duties.

Defendant further argues that the subject matter of the tort claims is different than the breach of contract claim because the tort claims concern misrepresentations of the purpose and

-14-

intent of the Rental Agreement and its connection with the Customer Agreement, whereas the contract claim is based on the promise that the $Zero Offerors, including Plaintiff, would pay the Public Access Service Providers under the Customer Agreement.  However, Defendant's attempt to construe the two claims as completely different fails.  Both Defendant's tort claims and breach of contract claim are premised on the same underlying argument: based on the Plaintiff's representations, the two agreements actually comprise one comprehensive contract, even though the terms of the agreements appear to suggest otherwise.

The tort claim here is clearly not independent of the contract; the tort claim necessarily depends on the existence of both contracts, the Customer Agreement and the Rental Agreement, and thus the facts regarding the contract are not collateral to the facts underlying the tort claim. As such, the tort claim cannot proceed concurrently with the contract claim under the gist of the action doctrine.

Thus, regardless of whether Defendant relies on oral or written representations as the basis of its fraud and misrepresentation claims, the parol evidence rule and gist of the action doctrine will bar the tort claims.  As a result, the motion to dismiss Defendant's tort claims will be granted.

    **B.**    **The Breach of Contract Claim is Valid But May Be Amended**

Defendant's breach of contract counterclaim does not suffer the same fate as its tort claims.  In Count I of the Counterclaim, Defendant alleges that Plaintiff breached the Customer Agreement by failing to pay for and provide the agreed upon public access services.  Under Pennsylvania law, a breach of contract occurs when facts establish "(1) the existence of a

contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." Omicron Systems v. Weiner, 860 A.2d 554, 564 (Pa. Super. Ct. 2004). Thus Defendant must show the existence of a contract that imposed a duty on Plaintiff and that Plaintiff breached that duty, causing Defendant's damages.

In this case, Defendant asserts Plaintiff is responsible for breaching a contract, the Customer Agreement, to which Plaintiff was not a signatory. Plaintiff suggests that Defendant has not sufficiently pleaded a theory for holding Plaintiff liable for breach of the Customer Agreement, and thus argues this count should be dismissed as well. Under Fed. R. Civ. P. 8, a party need not "plead law or match facts to every element of a legal theory." Weston v. Pennsylvania, 251 F.3d 420, 429 (3d Cir. 2001). The purpose of notice pleading under Rule 8 is to provide "the adversary party or parties [] sufficient notice to prepare their defense" and also ensure "that the Court is sufficiently informed to determine the issue." Philadelphia Dressed Beef Co. v. Wilson & Co., 19 F.R.D. 198, 201 (E.D. Pa. 1956). Still, the Supreme Court has recently "caution[ed] that without some factual allegation in a complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice' but also 'grounds' on which the claim rests." Id. (citing Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965 n. 3 (2007)).

Defendant has pleaded specific facts regarding the transaction and the relationship between Plaintiff and Capital 4. The Court does not find the allegations so deficient in providing law or facts that suggest how Plaintiff could be liable for the failure to provide services under the Customer Agreement. Defendant has suggested that Plaintiff and Capital 4 were engaged in a joint venture, the 3Com Power of $Zero™, through which they sought out Defendant's participation. Defendant has described how Plaintiff accepted payment on behalf of Capital 4

under the contracts for this program and has described how the two agreements appeared to cross-reference each other.  The Court will not grant the motion to dismiss the contract counterclaim on those grounds.

However, to the extent that Defendant wishes to amend its Counterclaims to add to or clarify its contract claim, the Court will allow such amendment.  Fed. R. Civ. P. 15(a) allows liberal amendment of the pleadings with consent of the parties or leave of the court, and the Third Circuit has held that leave to amend should be freely given unless there is "undue delay, bad faith on the part of the [movant], or prejudice to the [nomovant] as a result of the delay." Adams v. Gould, Inc., 739 F.2d 858, 867-68 (3d Cir. 1984).  Amendment may also be denied if it is futile.  Hill v. City of Scranton, 411 F.3d 118, 134 (3d Cir. 2005).  Plaintiff has not offered any persuasive reasons why undue prejudice will result at this early stage of the litigation, when discovery is ongoing, if Defendant is permitted to amend the counterclaim.  Similarly, there is no indication that amendment of the counterclaim will be futile.  Thus, Defendant will be permitted to amend the breach of contract counterclaim if it so desires, but may not plead facts that are barred by the parol evidence rule.

An appropriate order follows.

-17-

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

DE LAGE LANDEN FINANCIAL          :
SERVICES, INC.,                   :          CIVIL ACTION
                                  :
          Plaintiff,              :          NO. O8-0530
                                  :
     v.                           :
                                  :
BARTON NELSON, INC.,              :
                                  :
          Defendant               :


**ORDER**


        AND NOW, this           day of November 2008, for the reasons stated in the

foregoing Memorandum, it is hereby ORDERED that Plaintiff's Motion to Dismiss the

Defendant's Counterclaim (Doc. No. 12) is DENIED as to Count I and GRANTED with

prejudice as to Counts II-IV.

        Defendant is given leave to file an Amended Counterclaim within 21 days.



                                        BY THE COURT:


                                         /s Michael M. Baylson
                                        Michael M. Baylson, U.S.D.J.


A:\mtd memo draft 2.wpd